E-FILED
Friday, 07 January, 2022 11:58:09 AM
Clerk, U.S. District Court, ILCD

FILED
OCT 21 2021
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Two cellular telephones, seized on March 24, 2021,<br>currently in the custody of the Urbana Police Department | )<br>)  Case No. 21- MJ- 7120<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Central _____ District of _____ Illinois _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1); 846; 856 | Possession of controlled substances with the intent to distribute; conspiracy to distribute controlled substances; maintaining a drug-involved premises |

The application is based on these facts:
See affidavit of DHS/HSI Task Force Officer James Kerner

☐ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/James Kerner
_____
Applicant's signature

James Kerner, DHS/HSI Task Force Officer
_____
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 41 by
*telephone* _____ *(specify reliable electronic means).*

s/Eric I. Long

Date: 10/21/2021
_____
Judge's signature

City and state: Urbana, IL

Hon. Eric I. Long, U.S. Magistrate Judge
_____
Printed name and title

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, James Kerner, being first duly sworn on oath, depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices which are currently in law enforcement's custody and possession ("SUBJECT DEVICES")—and the extraction from that property of electronically stored information described in Attachment B.

2. For the past fourteen years and five months I have served as a police officer with the Urbana Police Department. I am also currently assigned as an investigator on the Champaign County Street Crimes Task Force (CCSCTF), and since February of 2020 I have been assigned as a Task Force Officer with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI). I have a bachelor's degree in Criminology from Indiana State University, and I went to the Police Training Institute in Champaign in 2007. Since that time I have accrued over 100 additional hours of drug specific enforcement training. As a federal Task Force Officer, I am a federal law enforcement officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure; that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Sections 841, *et seq.* From the aforementioned assignments, I have become familiar with narcotics investigations. I am familiar with how controlled

substances are obtained, diluted, packaged, distributed, sold, and used within the framework of drug smuggling and how drug smugglers use other persons and/or their personal property to facilitate their illegal activities.

3. The statements in this affidavit are based on my personal knowledge, and upon information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning the investigation. I have set forth facts I believe are sufficient to establish probable cause to believe evidence of violations of Title 21, United States Code, Sections 841(a)(1), 846 and 856, are located within the SUBJECT DEVICES.

## IDENTIFICATION OF THE SUBJECT DEVICES TO BE EXAMINED

4. The property to be searched includes: (1) a black Apple I-Phone with a cracked screen (Tag #11005) that was in AKHIR's possession during his arrest on March 24, 2021 and further described in Attachment A; and (2) a black Apple I-Phone with a black case (Tag #11006) that was located in AKHIR's silver 2005 Jeep bearing Illinois registration number CM17147 during his arrest on March 24, 2021. These devices are currently being stored in a secured location at the Urbana Police Department located at 400 S. Vine Street in Urbana, IL.

## PROBABLE CAUSE

5. I frequently use confidential informants (CI) in the course of my duties, and I have come to know a CI that I will refer to as UPD CI 1. UPD CI 1 currently has a

pending felony criminal case against him/her in the State of Illinois and is providing information to law enforcement for potential consideration from the States Attorney's office in the pending criminal matter. I have advised UPD CI 1 that although he/she is providing the information in this affidavit, he/she may not receive any consideration during sentencing from the States Attorney's office regarding the pending felony case against him/her. UPD CI 1 had not been promised or guaranteed anything from me regarding the pending case against him/her, nor by anyone else to the best of my knowledge.

6. I met with UPD CI 1 during March of 2021, and he/she advised me of the following information:

- UPD CI 1 stated that he/she has used crystal methamphetamine everyday (minus a few days that he/she was incarcerated) for the past two years. UPD CI 1 further stated that he/she has purchased and sold crystal methamphetamine over 50 times during the past two years. UPD CI 1 stated that based upon his/her personal experiences in purchasing, consuming, and selling crystal methamphetamine, he/she is familiar with the substance.
- UPD CI 1 stated that he/she purchases the majority of his/her crystal methamphetamine from a black male who is approximately 30 years old. UPD CI 1 noted that he/she calls the black male "P" and described him as being approximately 6'0" tall, weighing approximately 200 pounds, and has braids in his hair.

- UPD CI 1 stated that "P" lives in a yellow or cream-colored house in the 1600 block of Lowry Drive in Rantoul. UPD CI 1 stated that "P's" house is on the second lot away from a vacant lot in the 1600 block of Lowry Drive in Rantoul. UPD CI 1 further stated that there are normally two sport utility vehicles parked on the driveway of "P's" residence and one of them appears to be broken down.

- UPD CI 1 stated that he/she has gone to "P's" residence 1-3 times a week, every week, for the past year for the purpose of purchasing crystal methamphetamine from "P". UPD CI 1 stated that he/she purchases between 1-4 ounces of crystal methamphetamine from "P" a week and has done so for the past year. UPD CI 1 stated he/she was inside "P's" residence on an occasion between March 15, 2021, and March 23, 2021, and purchased crystal methamphetamine from "P". UPD CI 1 stated that "P" hides upwards of a pound of crystal methamphetamine inside a waffle box in his refrigerator's freezer compartment.

7. After meeting with UPD CI 1, I traveled to the 1600 block of Lowry Drive in Rantoul with Champaign County Sheriff's Office (CCSO) Investigator Malloch. While driving down the block, I saw a yellow or cream-colored house that was two lots away from a vacant lot. Said residence is located at 1612 Lowry Drive, Rantoul, Champaign County, Illinois, and is a yellow-sided single-story residence with the number "1612" marked on the siding by the front door (hereinafter referred to as the SUBJECT PREMISES). There were two sport utility vehicles parked on the driveway of the SUBJECT PREMISES. One of the vehicles was a silver 2005 Jeep bearing Illinois license plate number CM17147, and the other sport utility vehicle had unknown license plate

and appeared to be broken down. I conducted records checks which indicated the silver 2005 Jeep bearing Illinois license plate number CM17147 is registered to a male named Osiris A. Akhir.

8. I conducted a reverse address check in the Area-Wide Records Management System (ARMS) for the SUBJECT PREMISES. During the check, I noticed a male by the name of Osiris A. Akhir (hereinafter referred to as Akhir) was documented as living at the SUBJECT PREMISES on February 21, 2021. Further investigation in ARMS revealed that Rantoul Police Officer Carbajal stopped and cited Akhir on the above date for driving the aforementioned silver 2005 Jeep with a revoked driver's license and for operating an uninsured vehicle.

9. Per Rantoul Police Investigator Gregg, the utilities for the SUBJECT PREMISES have been in Akhir's name since October of 2020.

10. I also checked Akhir's Illinois identification card, which lists him as being 6'00 tall and weighing 180 pounds. I also viewed the photograph of Akhir on Akhir's Illinois identification card, and noted that Akhir is a black male with braids in his hair.

11. UPD CI 1 was shown a photograph of Akhir which did not show any biographical information. UPD CI 1 viewed the photograph and identified the pictured male, Akhir, as being the person he/she knows as "P."

12. Through further records checks, I discovered that Akhir is currently on federal supervised release for a conviction for Conspiracy to Distribute Fentanyl out of the Northern District of Indiana (Case No. 3:18-CR-94).

13. On March 23, 2021, CCSO Investigator Malloch and I transported UPD CI 1 to the 1600 block of Lowry Drive in Rantoul. While driving down the block, UPD CI 1 pointed to the SUBJECT PREMISES and identified it as being "P's" residence.

14. On March 23, 2021, I authored a search warrant for the SUBJECT PREMISES. UPD CI 1 and I swore to the contents of the search warrant before the Honorable Circuit Judge Roger B. Webber, who authorized the search of the SUBJECT PREMISES.

15. On March 24, 2021, members of the CCSCTF took up surveillance positions in the vicinity of the SUBJECT PREMISES. At approximately 1355 hours, Investigator Lance Carpenter observed Akhir's silver 2005 Jeep leave the SUBJECT PREMISES. CCSCTF investigators followed Akhir's Jeep to the Rural King parking lot, located at 1700 E Grove Avenue, Rantoul, Illinois. CCSCTF investigators made contact with Akhir, the driver and sole occupant of the Jeep. Akhir, whose driver's license is revoked, was taken into custody at 1401 hours. During a search incident to arrest, a black Apple I-Phone with a cracked screen (Tag #11005) was found to be in Akhir's possession and a black Apple I-Phone with a black case (Tag #11006) was found in Akhir's silver 2005 Jeep.

16. Investigator Malloch and I arrived at the Rural King after Akhir had been taken into custody. Akhir was advised a search warrant had been issued for the SUBJECT PREMISES and Akhir was transported back to the vicinity of the SUBJECT PREMISES. At 1411 hours, I advised Akhir of his *Miranda* rights. Having been advised of his rights, I had a brief conversation with Akhir. During the conversation, Akhir

stated he has lived at the SUBJECT PREMISES since October 2020. Akhir further stated he resides in the SUBJECT PREMISES by himself. Based on this, I inquired if everything located in the SUBJECT PREMISES belonged to Akhir. At that time, Akhir stated he no longer wanted to speak with me and the interview was terminated.

17.     No one else was present (other than searching law enforcement personnel and non-searching Champaign County Animal Control Officers) inside the SUBJECT PREMISES during the search. During the search of the SUBJECT PREMISES, CCSCTF investigators located the following, amongst other items on the property: approximately 105.7 grams of methamphetamine, including packaging (the majority of which was located inside the freezer compartment of the refrigerator); a 9MM pistol with a defaced serial number; a Glock .40 caliber pistol; three high capacity pistol magazines, pistol ammunition; a digital scale; and United States currency.

18.     Based on my training and experience, I am aware that 105.7 grams of methamphetamine is consistent with a distribution amount of the substance. I am also aware, based on my training and experience, that digital scales and firearms are common tools of the drug distribution trade.

19.     Based on my training and experience, I know that it is common for drug dealers to take photographs and or videos with their cellular telephone(s) of their product, proceeds from selling their product, and weapons (to include firearms) that are used to protect their product and proceeds. I also know that drug dealers will routinely utilize their cellular telephone(s) to set up and orchestrate drug deals with their customers through means of text messages, phone calls, and social media accounts. I

also know that it is common for drug dealers to have multiple phones in their possession and under their control to limit their exposure while trafficking illegal substances.

20. Based on my training, experience and research, I know that cellular devices have capabilities that allow them to store names and phone numbers in electronic "address books"; to send, receive and store text messages and e-mail; send, receive, and store still photographs and moving video; store and play back audio files; store dates, appointments, and other information on personal calendars; and access and download information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device and IP addresses so that internet traffic sent from and directed to that wireless telephone may be directed properly from its source to its destination. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, identify customers and sources of drug traffickers, reveal drug ledgers, reveal the locations of drug deals, and reveal phone contacts and text messages arranging drug trafficking (including with customers and sources of supply). I believe the black Apple I-Phone with a cracked screen (Tag #11005) that was in AKHIR's possession during his arrest on March 24, 2021 and the black Apple I-Phone with a black case (Tag #11006) that was located in AKHIR's silver 2005 Jeep bearing Illinois registration number CM17147 during his arrest on March 24, 2021 will both contain information pertinent to the ongoing investigation.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. The cellular devices described in Attachment A are currently located at the Urbana, Illinois Police Department at 400 S. Vine Street, in Urbana, Illinois. In my training and experience, I know that the cellular devices have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the devices first came into the possession of the Urbana Police Department.

22. My representations in the following paragraphs are based on and other agents/detectives education, training, and experience pertaining to the forensic extraction and examination of data stored or otherwise maintained on electronic devices:

    a) It is common for drug traffickers to maintain books, records, notes, ledgers, travel documents, and receipts relating to the purchase of financial instruments and/or transportation, ordering, sale and distribution of controlled substances. Such records are usually kept where the traffickers have ready access to them, including electronic records stored in cellular devices, and these records are often kept for an extended period of time.

    b) It is common for drug traffickers to maintain evidence regarding their obtaining, secreting, transfer, concealment, and/or expenditure of narcotics proceeds, including currency, financial records, financial instruments, jewelry and precious metals, books,

      records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, safe-deposit box keys, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, and money wrappers. These items are often maintained in drug traffickers' residences and other locations over which they exercise dominion and control, including electronic records stored in cellular devices, and they are often maintained for an extended period of time.

c) When drug traffickers amass significant proceeds from the sale and distribution of narcotics they often attempt to dissociate their assets from the source of their illegal activities through various money laundering activities. To accomplish these goals, drug traffickers use various means, including but not limited to domestic and international banks and their associated financial services, securities brokers, professional services from attorneys, accountants and financial consultants, casinos, real estate, shell corporations and business fronts and otherwise legitimate businesses, which generate large quantities of currency.

d) Drug traffickers commonly maintain addresses or telephone numbers in books, papers, cellular telephone memory and/or cellular telephone memory cards, which reflect names, addresses, and or telephone numbers for associates and customers.

  e) Drug traffickers often take or cause to be taken photographs and other visual depictions of themselves, their associates, their property and their product, and typically keep and maintain these photographs for extended time periods in their residences and other locations where they exercise dominion and control.

  f) Drug traffickers often use electronic devices, including computers, cellular telephones, electronic diaries, currency counting machines and cellular telephone answering machines to generate, transfer, count, record and or store information pertaining to the items described above and or to maintain contact with drug associates.

  g) When drug traffickers use a device such as those referred to in this affidavit as an electronic device and or cellular phone in connection with drug trafficking, along with maintaining contact with drug associates, the devices will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime.

23. There is probable cause to believe that information that was stored, however temporarily, on the cellular device may still be stored on the device, for at least the following reasons:

  a) Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage

medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not initially disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b) Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space-that is, in space on the storage medium that is not currently being used by an active file-for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c) Wholly apart from user-generated files, computer storage media-in particular, computers' internal hard drives-contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d) Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache".

e) In addition, applications operating on the cellular phones may transmit

and receive data, via the Internet, to store and retrieve information utilized by that application as well as applications which have the cellular devices' permission to access.

24. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the cellular device was used. There is probably cause to believe that this forensic electronic evidence might be on the cellular phone because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and applications store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as attachment of peripherals and the times the device was in use. Device file systems can record information about the date's files that were created and the sequence in which they were created.

      b.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search of "indicia of occupancy" while executing a search warrant at a residence.

      c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

25. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how an electronic device behaves. Therefore, contextual information necessary to understand other evidence also falls within the score of the warrant.

26. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the cellular devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose man parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

27. *Manner of execution.* Because this warrant seeks only permission to examine the device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize the execution of the warrant at any time in the day or night.

28. The cellular devices to be searched will be examined by one or more agents or law enforcement officers and technicians with specialized forensic training.

29. Due to the fact that the cellular device to be searched has already been seized due to lawful procedures, and due to the potential volume of information, complexity, and variety of items to be searched, it may not be possible to complete the full analysis of the cellular device with fourteen (14) days. Accordingly, I request the Court's permission to provide a return that indicates when the devices to be searched have been submitted for a forensic evaluation.

## REQUEST FOR SEALING

30. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations, as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online

through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

## CONCLUSION

31. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the cellular devices associated with Osiris Akhir, and stored at the Urbana Police Department, further described in Attachment A to seek the items described in Attachment B.

FURTHER AFFIANT SAYETH NOT.

s/James Kerner

James Kerner, Officer/HSI TFO
Urbana Police Department
Urbana, Illinois

Subscribed and sworn to before me this 21st day of October, 2021.

s/Eric I. Long

HONORABLE ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

1. The property to be searched is a black I-Phone cellular phone having a cracked screen with an unknown model or serial number located in Osiris Akhir's possession during his arrest in Rantoul, Champaign County, Illinois on March 24, 2021. This device is currently tagged as Urbana Police Evidence Tag # 11005 and is currently located at the Urbana Police Department at 400 S. Vine Street, Urbana, Illinois.

2. The property to be searched is a black I-Phone cellular phone having a black case with an unknown model or serial number located in Osiris Akhir's 2005 silver Jeep bearing Illinois registration CM17147 during Akhir's arrest in Rantoul, Champaign County, Illinois on March 24, 2021. This device is currently tagged as Urbana Police Evidence Tag # 11006 and is currently located at the Urbana Police Department at 400 S. Vine Street, Urbana, Illinois.

## ATTACHMENT B

1. All records on the cellular devices as described in Attachment A that relate to violations of 21 U.S.C & 841(a)(1) (the manufacture, distribution, and possession with intent to distribute controlled substances), 846 (conspiracy to distribute controlled substances), and 856 (maintaining a drug-involved premises) involving the above identified subjects of investigation including:

    a. Lists of customers and sources and related identifying information;

    b. Types, amounts, and prices of drugs trafficked as well as dates, places and amounts of specific transactions;

    c. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. Any information recording the subject(s) of investigation's schedule or travel

    e. All bank records, check, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents and browsing history;

    As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.